Robert A. Bleicher (SBN 111334)
Robert.bleicher@hogefenton.com
Ronald C. Finley (SBN 200549)
Ronald.finley@hogefenton.com
Remington A. Lenton-Young (SBN 295392)
Remington.lenton-young@hogefenton.com
Alexander H. Ramon (SBN 282867)
Alex.ramon@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Phone: 408.287.9501
Fax: 408.287.2583

Attorneys for Defendant
ACTIVEHOURS, INC. dba EARNIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

BRENNAN ORUBO, MICHAEL SIMS, DEMETRICE MATHIS, and CIDNEY LETT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ACTIVEHOURS, INC. dba EARNIN,

Defendant.

Case No. 5:24-cv-04702 PCP

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**

Date: February 27, 2025
Time: 10:00 a.m.
Crtrm.: 8
Judge: Hon. Casey Pitts

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 27, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Casey Pitts, located in the Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Activehours, Inc. d/b/a EarnIn ("Defendant") will and hereby does move this Court to Dismiss Plaintiffs' First Amended Complaint.

This Motion is made upon the following grounds:

The first cause of action for violation of the Georgia Payday Loan Act (O.C.G.A. §16-17-1, *et seq.*) fails to state a claim against Defendant. Fed. R. Civ. P. 12(b)(6).

The second cause of action for violation of the Truth in Lending Act (15 U.S.C. §§ 1601 *et seq*.) failed to state a claim against Defendant. Fed. R. Civ. P. 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Ronald C. Finley filed concurrently herewith and exhibits thereto, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should dismiss Plaintiffs' First Amended Complaint for failure to state a claim against Defendant pursuant to Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This Court should dismiss Plaintiffs' claims set forth in their First Amended Complaint ("FAC") because even after amending in response to Defendant's first Motion to Dismiss, Plaintiffs still have not pled sufficient facts to plausibly show that they may prevail under Federal Rules of Civil Procedure 8 and 12, and the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than add sufficient facts to support their allegations, Plaintiffs' FAC relies instead on unsupported and conclusory statements. Despite those new statements, however, the FAC still does not state facts sufficient to meet Plaintiffs' pleading requirements. Accordingly, Defendant requests that the Court dismiss all of Plaintiffs' causes of action with prejudice.

This putative class action against Defendant arises from Plaintiffs' overly inclusive search for perpetrators of predatory payday lending schemes that ensnare consumers in an endless cycle of high interest debt. Contrary to Plaintiffs' mischaracterizations, artful omissions, and conclusory statements, Defendant Activehours, Inc., dba EarnIn ("EarnIn" or "Defendant") does not contribute to that burden. Rather, and in stark contrast to payday lenders, EarnIn's earned wage advance service is an interest-free, non-recourse means for workers to access their previously earned wages with absolutely no obligation to repay EarnIn. Accordingly, as a matter of both fact and law that cannot be reframed by Plaintiffs, EarnIn's earned wage access service simply does not violate the two statutes at issue in the FAC, the Truth in Lending Act (15 U.S.C. § 1638(a)(2), (3), (4), (5)) ("TILA") or Georgia's Payday Lending Act (Ga. Code Ann. § 16-17-1 (West), *et seq.*) ("Payday Lending Act" or "GPLA"), nor does EarnIn's earned wage access service contravene the public policy underlying those statutes.

## II. FACTS

Plaintiffs allege that Defendant operates an app called EarnIn that offers customers capped cash advances to be repaid on a consumer's next payday. FAC ¶¶18-21. Critically, but incorrectly, Plaintiffs also allege in a conclusory fashion that EarnIn is a "lender" requiring repayment of the

cash advances at usurious rates. FAC ¶¶19, 25, 34, 83. In truth, EarnIn's Cash Out User Agreement explicitly states that EarnIn offers earned wage advances without **any** obligation to repay the money EarnIn advances. Hoping to avoid that reality, Plaintiffs omit from their recitation that customers may even receive a refund of voluntary tips they may have chosen to pay. EarnIn's Cash Out User Agreement explicitly informs its customers, in relevant part, that:

> ***You are not required to pay any fees or charges to use any of the Cash Out Services, however, additional fees may apply to use Lightning Speed.*** You may choose to pay a voluntary gratuity (a **"tip"**) when you elect to obtain a Cash Out. **Payment of a tip is completely optional.** Payment or non-payment of a tip will not affect your eligibility to participate in the Cash Out Services and will not affect the size of any Cash Out you receive. Any tip that you provide will be debited from your Bank Account when you repay the Cash Out. **EarnIn will refund a tip if you request a refund within 30 days of repayment of a Cash Out. To request a refund for a tip, please live chat with the EarnIn team through the *EarnIn App*.**
>
> […]
>
> ***You do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against you based on your failure to repay any of the Cash Out Services. However, if you do not repay a Cash Out Service or EarnIn is unable to complete a repayment to EarnIn that you authorized, you will be prevented from using the Cash Out Services until you pay any outstanding authorized payment to EarnIn.*** EarnIn warrants that it will not (i) engage in any debt collection activities if Cash Out Services are not repaid on the scheduled date, (ii) place the amount of the outstanding Cash Out Services as a debt with, or sell it to, a third party, or (iii) provide any reporting to a consumer reporting agency concerning the amount of the Cash Out Services.

Ex. A to the Declaration of Ronald C. Finley in support of Defendant's Motion to Dismiss ("Finley Decl."),[1] EarnIn's Webpage, *last accessed* January 9, 2025, www.earnin.com/privacyandterms/cash-out/terms-of-service#noFeesNew (Italics and Underline

[1] In deciding a Fed. R. Civ. P. 12(b)(6) motion, the court generally may not consider material outside the complaint and pleading. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, *see Branch*, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and material of which the court may take judicial notice. (*Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Here, Plaintiffs' FAC necessarily relies on the content of EarnIn's website and app including the terms of service and warranties, which outline the parties' obligations to one another and which Plaintiffs specifically reference in their FAC at paragraphs 23, 40, 41, 44, 45, and 53.

emphasis added, Bolded emphasis included in original).

In a bout of misdirection, the FAC improperly focuses on Plaintiffs' "needs" to receive immediate cash advances rather than any condition of EarnIn's services that would *require* a user to pay a Lightning Speed fee or a tip to obtain a wage advance. Indeed, the FAC attempts to improperly focus on certain Plaintiffs' immediate needs for money to improperly claim that EarnIn required them to pay a Lightning Speed fee. FAC ¶¶ 22-23. That incurably false allegation carries over from the original Complaint. While EarnIn does offer the ability for users to access their earned but unpaid funds "within minutes" for an expedited transfer fee called a "Lightning Speed" fee, the undisputed fact is that no user is **required** to pay a Lightning Speed fee or a tip to obtain an earned wage advance from EarnIn. Both the "Lightning Speed" fee and any "tips" that a customer may choose to pay are **purely voluntary**. Ex. B to Finley Decl., EarnIn's Webpage *available at* https://www.earnin.com/products/cashout, last accessed January 10, 2025; *see also* Ex. C to Finley Decl., EarnIn's 9/18/24 Cash Out User Agreement, § 6 *available at* https://www.earnin.com/privacyandterms/cash-out/terms-of-service, last accessed January 10, 2025 ("**You are not required to pay any fees or charges to use any of the Cash Out Services, however, additional fees *may* apply to use Lightning Speed.** You *may choose* to pay a voluntary gratuity (a **"tip"**) when you elect to obtain a Cash Out.") (Bold in original, Italics added). Realizing that they cannot get around that fact, the FAC then makes another conclusory statement that EarnIn's disclaimer in its terms and conditions that informs customers that there is no obligation to repay any funds is a "sham." FAC ¶63. Just as in their original Complaint, the FAC also fails to allege any facts to support that false and baseless assertion.

In addition, even if EarnIn is unable to recoup the amount EarnIn advanced to the customer, the customer suffers no adverse consequences of any kind other than suspended future services. As EarnIn **explicitly states** on its website, EarnIn has no right to take any action against customers if they elect not to repay EarnIn, EarnIn simply absorbs the loss. Ex. C to Finley Decl., EarnIn's 9/18/24 Cash Out User Agreement, § 7 ("**You do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against you based on your failure to repay any of the Cash Out Services.**" (emphasis in original)). As such, EarnIn

is a viable and practical option for any customer to chip away at predatory high interest loans, pay necessary life expenses as they occur, or pay for unexpected emergencies without any fear of falling deeper into debt or suffering any negative consequences to their credit scores. EarnIn's business model gives its customers the benefit of the doubt while EarnIn assumes all the financial risk. In contrast, Plaintiffs' insufficiently pled FAC depends on unsubstantiated conclusions that assume the worst of EarnIn while ignoring the reality of how EarnIn's earned wage access service actually works.

The FAC also makes unsupported and irrelevant allegations that the voluntary "tips" paid to EarnIn are a major source of revenue for EarnIn and that all associated representations EarnIn makes regarding tips are false. The FAC claims that these tips are tactics to pressure customers into paying tips but once again, Plaintiffs provide no support for those claims. FAC ¶¶47-49. And, critically, the FAC also stops short of saying Plaintiffs believed they were required to pay tips because their allegations show that their payment of tips was variable—i.e. they did not have to pay tips or Lightning Speed fees to obtain an advance. FAC ¶¶97-100; Ex. C to Finley Decl., § 6. Plaintiffs' concession of this fact rebuts their claims that they were pressured into paying tips or that the tips were compulsory.

## III. STATEMENT OF RELIEF SOUGHT

By this motion, Defendant seeks dismissal of both causes of action asserted against it in the FAC.

## IV. ANALYSIS

### A. Legal Standard for Granting Motion to Dismiss

To properly state a claim upon which relief can be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Fed. R. Civ. P. 8(a). Fed. R. Civ. P. 12(b)(6) in turn authorizes a court to dismiss a cause of action that fails to satisfy the standard set forth in Rule 8. Under Fed. R. Civ. P. 12(b)(6), a dismissal is proper where the complaint fails to state a "cognizable legal theory" or lacks "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Ashcroft*, 556 U.S. at 678; *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 555 *(internal citations and parentheticals omitted)*. "[M]ere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. A conclusory assertion is a conclusion without "factual enhancement" to support the conclusion and is not entitled to a presumption of truth. *Ashcroft*, 556 U.S. at 678–79. In other words, "[t]he plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 677–78).

In reviewing the FAC, the Court need not accept as true unwarranted deductions of fact, legal characterizations, conclusory allegations, or unreasonable inferences. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Additionally, when a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Ashcroft*, 556 U.S. at 678–79 (citation and quotations omitted).

Generally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000). Plaintiffs have already been provided with the opportunity to amend their original Complaint. Yet, the FAC suffers from the same deficiencies set forth in the original Complaint and Plaintiffs have demonstrated their inability to plead facts sufficient to even remotely demonstrate that their transactions with Defendant constitute loans subject to either TILA or the GPLA. Therefore, it is apparent that no further amendment would cure Plaintiffs' defective FAC.

### B. The First Cause of Action Should be Dismissed Because There Is No Obligation to Repay Funds Received and Therefore the Advances Do Not Violate the Georgia Payday Lending Act

Plaintiffs' first cause of action alleges EarnIn's practices violate the GPLA (Ga. Code Ann. § 16-17-1, *et seq*). FAC ¶¶108-115. The GPLA, however, provides in relevant part that:

> Subject to the exceptions in subsection (a) of this Code section, this Code section shall apply with respect to all transactions in which funds are advanced ***to be repaid at a later date***, notwithstanding the fact that the transaction contains one or more other elements.

Ga. Code Ann. § 16-17-2(b) (*emphasis added*.)

The Georgia Supreme Court considered the scope of the GPLA's reach based on this language and found, "[w]hile the Payday Lending Act governs 'the making of loans of $3,000.00 or less,' it does not expressly define the term 'loan.' But, it implicitly gives meaning to that term by its provision that it 'shall apply with respect to all transactions in which funds are advanced to be repaid at a later date,' Ga. Code Ann. § 16-17-2 (b), a provision that is most reasonably understood to contemplate an agreement that imposes an obligation to repay." *Ruth v. Cherokee Funding, LLC*, 304 Ga. 574, 579 (2018). As such, the Georgia Supreme Court determined that where there is no absolute obligation to repay, there is no viable claim under the Payday Lending Act. *Id.* at 578–79 ("When funds are advanced under an agreement that repayment is required only upon the occurrence of a contingency, and even then, perhaps only to a limited extent (depending upon the particulars of the contingency), the funds are not, we think, 'advanced to be repaid' for purposes of the Payday Lending Act."). Here, there is neither an absolute nor even a contingent obligation to repay. EarnIn simply does not impose any obligation to repay.

Thus, Plaintiffs' first cause of action under Georgia's Payday Lending Act fails as a matter of law because EarnIn's Cash Out User Agreement explicitly states, in bold offset type: "**[y]ou do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against you based on your failure to repay any of the Cash Out Services.**" Ex. A to Finley Decl. (emphasis in original). Despite Plaintiffs' long narrative, the FAC does not actually plead facts to support Plaintiffs' allegations. Instead, the FAC is just a series of baseless and conclusory statements, including one saying that EarnIn's disclaimer is a "sham" but providing no facts to support such an assertion. These unsupported allegations do not fix Plaintiffs' problem. As noted by the Supreme Court in the *Ashcroft* case, such conclusory assertions are not entitled to a presumption of truth. *Ashcroft*, 556 U.S. at 678–79. Consequently, it is clear that Plaintiffs' first cause of action must be dismissed without leave to amend.

### C. The Second Cause of Action Should be Dismissed Because EarnIn Does Not Extend Credit, Is Not a Creditor, and Therefore the Truth in Lending Act Does Not Apply

The FAC's second cause of action asserts a violation of TILA's disclosure requirements. Plaintiffs assert, incorrectly, that EarnIn was required to disclose certain finance terms to consumers, including the "amount financed," "finance charge," "annual percentage rate," and "total of payments," and such failure to make those disclosures violates TILA. FAC ¶120 (citing 15 U.S.C.A. § 1638(a)), 88 (citing 15 U.S.C.A. § 1638(a)(2), (3), (4), (5)), 90.[2] Put simply, Plaintiffs' second cause of action misunderstands TILA and the meaning of consumer credit transactions pursuant to 15 U.S.C.A. § 1602. In order to fall under TILA, the Lightning Speed fees and tips must be a necessary condition to credit. The FAC does not plead such facts, and therefore dismissal is appropriate.

TILA and its enacting regulation, Regulation Z, require certain disclosures by *creditors* in connection with consumer loans. TILA's purpose is to "avoid the uninformed use of credit." 15 U.S.C.A. § 1607. Congress "sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). All disclosures must reflect the respective "legal obligation" of the parties. 12 C.F.R. § 226.17(c)(1). "The basic [*sic*] of the Truth-in-Lending Act and Regulation Z provides for the disclosure to the consumer of three different, but related, figures: (1) 'the amount of credit of which the customer will have the actual use,' using the term 'amount financed' (12 C.F.R. § 226.2(d), 226.8(d) (1)); (2) the amount which the creditor proposes to charge for the credit thus extended, using the term 'finance charge' (12 C.F.R. §

[2] Plaintiffs also cite to a proposed interpretive rule by the Consumer Financial Protection Bureau (the "CFPB") as additional support for their claims that TILA applies to earned wage access providers like EarnIn and that tips and fees like those referenced in the FAC are finance charges. FAC ¶¶90-92. Interpretive rules, however, simply "advise the public" and lack "the force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015). Further, the proposed interpretive rule cited by Plaintiffs is just that – *proposed*. It is *not* an adopted interpreted rule. FAC ¶90. It is also noteworthy that the proposed interpretive rule received a substantial number of comments – most of them challenging the draft interpretation – that the CFPB is still considering. Since the proposed interpretive rule has not been adopted, and is still under consideration by the CFPB, it is not at all binding on this Court.

226.2(q), 226.4); and (3) the total of the amount financed and the finance charge, comprising the total of payments (12 C.F.R. § 226.8(b)(3)).” *Pedro v. Pac. Plan of California*, 393 F. Supp. 315, 321 (N.D. Cal. 1975).

Relevant here, the term “creditor” refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. 15 U.S.C.A. § 1602(g). Applying this definition, Plaintiffs have not and cannot plead facts sufficient to establish that EarnIn is a “creditor” within the meaning of TILA. Quite simply, EarnIn is not a creditor because it does not extend “credit” under TILA. Further, even if EarnIn were considered to extend “credit,” (i) its advances are not “payable by agreement in more than four installments”; and (ii) there is *no requirement* to pay a “finance charge” on EarnIn’s advances.

Regulation Z, which implements TILA, defines “credit” as “the right to defer payment of debt or to incur debt and defer its payment.” 12 § CFR 1026.2(14). However, EarnIn’s advances do not qualify as “credit” within the meaning of TILA because those advances do not defer or incur debt for a consumer. No “debt” is created by an EarnIn advance because the consumer has no obligation to repay EarnIn for EarnIn’s advances. This determination is consistent with holdings in other courts, which have held that businesses with non-recourse funding structures similar to EarnIn’s are not required to make any disclosures under TILA. *See Harmon v. Fifth Third Bancorp*, Case No.: 1: 18-cv-00402, at *18 (S.D. Ohio May 15, 2020). As held in *Harmon*, where a consumer “has no liability…for losses associated with [an advance],” such advance is not “credit” within the meaning of TILA. *Id*.

To the extent that an EarnIn advance could be considered “credit” within the purview of TILA, EarnIn still cannot reasonably be considered a “creditor” under TILA. First, EarnIn’s advances are repaid—if at all—in a single installment and not “in more than four installments.” Moreover, as discussed *supra*, the advances are non-recourse and as such, the customer has no legal

or contractual obligation to repay the advance. Plaintiffs will never be able to allege facts about EarnIn that bring EarnIn within the definition of a "creditor" under TILA.

Second, the FAC fails to plead facts sufficient to demonstrate the existence of a requirement to pay a "finance charge," because no such requirement exists where no finance charge is ever imposed. All payments that EarnIn receives are voluntarily paid by customers and are never imposed by EarnIn. This is true for the tips that a consumer may choose to pay and also for the consumer's voluntary choice to pay a Lightning Speed fee for expedited service.

TILA defines "finance charge" as: "[T]he sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C.A. § 1605(a). Neither the discretionary tip nor the optional Lightning Speed fee constitutes a "finance charge" within the meaning of TILA because neither is imposed "as an incident to the extension of credit." Importantly, the "phrase 'incident to' as it relates to the extension of credit requires a necessary connection between the credit and the charge." *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2024 WL 4204272, at *6 (M.D. Pa. Sept. 16, 2024) (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239–41 (2004)). Neither the voluntary and discretionary tip nor the optional Lightning Speed fee referenced by Plaintiffs constitutes a "finance charge" within the meaning of TILA because neither is imposed "as an incident to the extension of credit" to establish such a "necessary connection." *Id.* Voluntary charges entirely within the consumer's control are not "incident to the extension of credit." *See, e.g.*, *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996) ("Since the Veales could have chosen not to pay the Federal Express fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit and need not be included in the Finance Charge. … [T]he charge here was not incidental to the extension of credit.").

Moreover, TILA's finance charge provision is part of "a disclosure statute, not a fair pricing law." *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 38 (2d Cir. 2011); *see also Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302 (E.D. Pa. 2016). Plaintiffs do not allege – nor could they – that the tip amount or Lightning Speed fee is not disclosed to the consumer. Indeed, Plaintiffs allege

that consumers seeking an advance are necessarily taken to a webpage or screen where they can decide whether to tip and can choose to modify the amount – including to tip $0. FAC ¶¶ 44-45. Further, the consumer has the ability to change the tip amount after the fact, **including subsequently reducing it to zero, by requesting a refund**. *See* Ex. C to Finley Decl., EarnIn's 9/18/24 Cash Out User Agreement, § 6 ("**EarnIn will refund a tip if you request a refund within 30 days of repayment of a Cash Out.**") (Emphasis in original). In the same vein, EarnIn's app clearly provides customers like Plaintiffs with the option to choose between an expedited speed transfer or a standard speed transfer, and the app discloses up front that standard speed service is provided at no cost whereas the expedited transfer is subject to EarnIn's Lightning Speed fee. This fact is further evidence that the Lightning Speed fee is also conspicuously disclosed. *See* FAC ¶¶ 26-33; Ex. D to Finley Decl, EarnIn App Screenshot (showing option to use free standard service or pay for lightning speed service). Like the "creditor" requirement described above, it will also be impossible for Plaintiffs to ever allege facts that EarnIn *imposes* an undisclosed "finance charge" under TILA.

Accordingly, Plaintiffs' TILA cause of action also fails as a matter of law and should be dismissed without leave to amend.

## V. CONCLUSION

Based on the foregoing, Defendant requests that this Court enter an Order granting Defendant's Motion to Dismiss Plaintiffs' entire FAC without leave to amend.

DATED: January 10, 2025

HOGE, FENTON, JONES & APPEL, INC.

By: */s/ Ronald C. Finley*

Robert A. Bleicher
Ronald C. Finley
Remington A. Lenton-Young
Alexander H. Ramon
Attorneys for Defendant
ACTIVEHOURS, INC. dba EARNIN