COOLEY LLP
BRETT DE JARNETTE (292919)
AMIE L. SIMMONS (336356)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
bdejarnette@cooley.com
asimmons@cooley.com

WILLIAM K. PAO (252637)
JONATHAN B. WAXMAN (294851)
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
wpao@cooley.com
jwaxman@cooley.com

*Attorneys for Defendant*
ACTIVEHOURS, INC. dba EARNIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| BRENNAN ORUBO, MICHAEL SIMS, DEMETRICE MATHIS, and CIDNEY LETT, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACTIVEHOURS, INC. d/b/a EARNIN,<br><br>Defendant. | Case No. 5:24-cv-04702-PCP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:            November 20, 2025<br>Time:           10:00 a.m.<br>Dept:           Courtroom 8, 4th Floor<br>Judge:         Hon. P. Casey Pitts<br><br>Trial Date:            None Set<br>Date Action Filed: August 2, 2024 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................ 1
STATEMENT OF RELIEF SOUGHT ................................................................................................. 1
STATEMENT OF THE ISSUES ........................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 2
   I.    INTRODUCTION ........................................................................................................ 2
   II.   BACKGROUND .......................................................................................................... 3
        A.    EarnIn Facilitates User Access to Already Earned Wages ..................................... 3
        B.    Plaintiffs' Transaction Records Show They Often Declined to Tip or Use Lightning Speed .......................................................................... 5
        C.    The Current Record Supports Dismissal ................................................................ 8
   III.  LEGAL STANDARDS ............................................................................................... 9
   IV.  ARGUMENT ................................................................................................................ 9
        A.    The Transaction Records Show Tips and Lightning Speed Fees Are Voluntary—and Therefore Not Finance Charges under TILA ............................. 10
        B.    Georgia Law Confirms Tips and Fees Are Not "Interest" Under the GPLA ........ 12
        C.    EarnIn's Cash Out Product Is Neither "Credit" under TILA Nor a "Loan" under the GPLA ................................................................................................... 13
        D.    Georgia Law and Legislative Action Confirm Cash Outs Are Not Loans ........... 14
   V.   CONCLUSION ........................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012)........................................................................................... 9

*Foster v. EquityKey Real Est. Invs. L.P.*,
  No. 17-CV-00067-HRL, 2017 WL 1862527 (N.D. Cal. May 9, 2017)................................. 13

*Golubiewski v. Activehours, Inc.*,
  No. 3:22-CV-02078, 2024 WL 4204272, at *6 (M.D. Pa. Sept. 16, 2024) .............................. 9

*Grouse River Outfitters Ltd. v. Oracle Corp.*,
  848 F. App'x 238 (9th Cir. 2021) ........................................................................................ 9

*Harmon v. Fifth Third Bancorp*,
  No. 18-CV-00402, 2020 WL 2512820 (S.D. Ohio May 15, 2020), *aff'd*, 858 F.
  App'x 842 (6th Cir. 2021)................................................................................................. 14

*Littlejohn v. Phoenix Title Loans LLC*,
  No. CV-18-04250-PHX-SMB, 2020 WL 2527017 (D. Ariz. May 15, 2020) ........................ 10

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ...................................................................................................... 12

*Lyon v. Chase Bank USA, N.A.*,
  656 F.3d 877 (9th Cir. 2011).............................................................................................. 9

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  No. C 09-1967 CW, 2012 WL 1745593 (N.D. Cal. May 16, 2012) ....................................... 8

*O'Brien v. J.I. Kislak Mortg. Corp.*,
  934 F. Supp. 1348 (S.D. Fla. 1996) ................................................................................... 11

*Railey v. Pentagon Fed. Credit Union*,
  No. EDCV 22-2166 JGB, 2024 WL 3059343 (C.D. Cal. May 9, 2024) ............................... 10

*Reed v. Val-Chris Invs., Inc.*,
  No. 11-cv-371 BEN (WMC), 2011 WL 6028001 (S.D. Cal. Dec. 5, 2011).......................... 13

*Ruth v. Cherokee Funding, LLC*,
  304 Ga. 574 (2018) ........................................................................................................... 13

*Slowjewski v. Polam Fed. Credit Union*,
  No. C-09-3011 JCS, 2010 WL 4973757 (N.D. Cal. Dec. 1, 2010), *aff'd sub
  nom. Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534 (9th Cir. 2012).................... 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

*In re Tractug Assocs.*,
  1996 WL 230765 (N.D. Cal. Apr. 30, 1996) .............................................................................. 15

*Veale v. Citibank, F.S.B.*,
  85 F.3d 577 (11th Cir. 1996) ............................................................................................. 2, 11, 12

*Velasquez v. State*,
  623 S.E.2d 721 (Ga. App. 2005) ............................................................................................... 15

*Williams v. First Bank & Tr. Co.*,
  269 S.E.2d 923 (Ga. App. 1980) ............................................................................................... 12

**Statutes**

15 U.S.C. § 1605(a) ........................................................................................................................ 11

15 U.S.C. § 1638(a) .......................................................................................................................... 9

Fair Labor Standards Act ............................................................................................................... 11

Georgia Payday Loan Act ........................................................................................................ 1, 2, 9

Military Lending Act ........................................................................................................................ 9

O.C.G.A. § 16-17-2(a)(1)(G) ..................................................................................................... 9, 12

O.C.G.A. § 16-17-2(b) ................................................................................................................... 13

Truth in Lending Act ......................................................................................................................... 1

**Other Authorities**

12 C.F.R. pt. 1026, supp. I, Part 1 ¶¶ 6(a)(2)-2(ix)–(x) (2024) ...................................................... 12

12 C.F.R. § 1026.4(a) ..................................................................................................................... 10

29 C.F.R. § 531.52(a) ..................................................................................................................... 11

68 Fed. Reg. 16185, 16187 (Apr. 3, 2003) ..................................................................................... 12

75 Fed. Reg. 58539, 58627 n.77 (Sept. 24, 2010) .......................................................................... 12

82 Fed. Reg. 54472, 54547 (Nov. 17, 2017) .................................................................................. 11

2025 Leg., Reg. Sess. (Ga. 2025) ................................................................................................... 14

*Earned Wage Access Consumer Protection Act*, H.R. 7428, 118th Cong., 2d Sess.
  (2024) ........................................................................................................................................ 15

FDIC, *Consumer Compliance Examination Manual* (rev. July 2024) ......................................... 11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

Federal Rule of Civil Procedure 12(c) ................................................................................... 1, 8, 9

Ga. Att'y Gen. Unofficial Op., U2024-1 (Dec. 6, 2024) ............................................................... 2

Georgia Senate Bill 282 (Feb. 2025) ............................................................................................ 9

Rule 12(b)(6) ................................................................................................................................ 9

Senate Bill 282 ..................................................................................................................... 14, 15

Treasury, *General Explanations of the Administration's Fiscal Year 2023 Revenue Proposals* (2022) ................................................................................................................. 15

Treasury, *General Explanations of the Administration's Fiscal Year 2024 Revenue Proposals* (2023) ................................................................................................................. 15

Treasury, *General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals* (2024) ................................................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 20, 2025, or as soon thereafter as the matter may be heard, before the Honorable P. Casey Pitts, Defendant Activehours, Inc. d/b/a EarnIn ("EarnIn," "the Company," or "Defendant") will move the Court pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. This Motion is based on the pleadings, the Memorandum of Points and Authorities, and the Request for Judicial Notice and Incorporation by Reference in Support of Defendant's Motion for Judgment on the Pleadings ("RJN") filed concurrently herewith, the Declaration of Brett De Jarnette ("De Jarnette Decl.") and exhibits thereto filed concurrently herewith, all pleadings and papers on file in this matter, and any other matters which may be submitted to this Court at the hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Defendant seeks an order under Rule 12(c) dismissing Plaintiffs' First Amended Class Action Complaint (the "FAC" or "Amended Complaint") with prejudice.

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs fail to adequately plead that Defendant's Cash Out product imposes "Finance Charges" under the Truth in Lending Act ("TILA") in light of their own transaction histories.

2. Whether Plaintiffs fail to adequately plead that Defendant's Cash Out product imposes interest in excess of 16% per annum under the Georgia Payday Loan Act ("GPLA").

3. Whether Plaintiffs fail to adequately plead that Defendant's Cash Out product constitutes an extension of credit under TILA or a loan under the GPLA given that customers can revoke debit authorization at any time, among other reasons.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs survived dismissal by selectively excluding **99%** of their Cash Out transactions from the Amended Complaint. The omitted transactions contradict the Amended Complaint's allegations, confirm that Lightning Speed fees and tips are optional, and compel dismissal of Plaintiffs' TILA and GPLA claims.

In its April motion to dismiss order, the Court found that tipping is a "finance charge" under TILA because it is "mandatory" and/or "inextricably intertwined" with receiving a cash advance. But the Court ruled without the benefit of knowing that each Plaintiff chose to tip only occasionally. For example, Orubo declined to tip in **62 of 79** Cash Outs, or nearly **80%** of the time. These transaction histories confirm that EarnIn's tips are not inextricably intertwined with advances. Nor are they "imposed by" EarnIn, as required under TILA.

Optional Lightning Speed fees also are not finance charges—they are not "necessary conditions" of receiving Cash Outs. To convince the Court otherwise, Plaintiffs alleged that "the Lightning Speed fee is effectively mandatory." But Plaintiffs Lett and Sims *declined* the optional Lightning Speed service in nearly **150 separate transactions**. How quickly the user chooses to receive their earned but unpaid wages does not change the underlying product. Put simply, optional fees for expedited delivery options, like Lightning Speed fees, are not finance charges. *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996) (expedited mailing fee for loan refinancing not a finance charge).

Plaintiffs also fail to plead a GPLA claim because tips and Lightning Speed fees are not "interest"—an issue the Court has not yet addressed. Unlike recurring payments that accrue on top of principal balances, tips and Lightning Speed fees are one-time payments. For this reason, the Georgia Attorney General opined that such fees and tips are not "interest" under Georgia law. Ga. Att'y Gen. Unofficial Op., U2024-1 (Dec. 6, 2024), ECF 39-2.

Finally, a Cash Out is not an extension of credit under TILA or a loan under the GPLA. EarnIn tells customers that they may revoke debit authorizations at any time via email or by live-chatting EarnIn's customer support team. Users may also avoid repayment in several other ways,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

including by de-linking or closing their bank accounts, submitting stop payment orders with their banks, or by closing their EarnIn accounts—all without any recourse by the company. This conflicts with inaccurate allegations in the Amended Complaint that EarnIn "ensures it gets repaid."

Because the current record refutes the Amended Complaint's key allegations, and EarnIn is entitled to judgment as a matter of law on Plaintiffs' claims, EarnIn respectfully moves for judgment on the pleadings. Plaintiffs' claims should be dismissed with prejudice.

## II.   BACKGROUND

### A.   EarnIn Facilitates User Access to Already Earned Wages

EarnIn is a financial technology company that, for over a decade, has enabled users to access a portion of their earned, but unpaid wages.[1] FAC ¶¶ 16, 21. Through EarnIn's mobile app or website, users may obtain "Cash Outs" ahead of their regular payday. *Id.* ¶ 20. No credit check is required—users simply link their bank account to receive the Cash Out. *See* Ex. 1[2], The Cash Out Services § 1.

Users can choose between two delivery speeds to receive their Cash Out. Standard ACH transfers are free and deposited into the user's bank account within one to two business days, depending on the time of day the transaction is initiated. *See id.*, The Cash Out Services § 2. For a fixed, nominal fee, users may opt for "Lightning Speed" transfers, guaranteeing an expedited transfer of a Cash Out, which typically reaches users within minutes. *See id.*

---

[1] *See Founder's Story*, EARNIN, https://www.earnin.com/press#:~:text=Founder's%20story ,Ram%20Palaniappan (last visited July 24, 2025).
[2] All citations to "Exhibit" or "Ex." refer to the exhibits attached to the De Jarnette Decl. filed concurrently herewith.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP



This fee is entirely optional and functions as a convenience charge—akin to paying for expedited shipping, an out-of-network ATM charge, or instant transfers on platforms like PayPal, Venmo, or CashApp. *See id*. A user's decision to select Lightning Speed and pay a fee for expedited delivery is entirely separate from the user's ability to receive a Cash Out in the amount they request. The fee is not a condition of receiving a Cash Out, nor does it affect the amount advanced. It is paid solely to access a faster disbursement method—nothing more. *See id.*

Users may also leave a tip as a form of appreciation (*see* FAC ¶¶ 41, 44)—similar to tip screens in corporate settings—like Hopper (travel industry), GoFundMe (fundraising industry), and ActBlue (fundraising industry). Nearly half of users leave no tip.[3] Whether users choose to leave a tip or choose not to leave a tip has no bearing on the availability, amount, user experience, or speed of the user's advance. *See* Ex. 1, The Cash Out Services § 6.

Cash Outs are not "payday loans." There is no legal duty to repay, no interest, no debt collection, and no credit reporting. *See* Ex. 2 at 3; Ex. 3 at 4–5; Ex. 4. Under the Cash Out User

---

[3] *See Reimagining the Way Money Moves*, EARNIN, https://www.earnin.com/impact (last visited July 24, 2025).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

Agreement, users "do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against [them] based on [a] failure to repay." *See* Ex. 1, The Cash Out Services § 7.

Each Cash Out is a one-time transaction. Users authorize EarnIn to debit their account on payday for the advance amount, plus any optional tip or Lightning Speed fee. *See* Ex. 10. Users may revoke this authorization anytime by contacting EarnIn via email or by live-chatting EarnIn's customer support. *See id.*; De Jarnette Decl. ¶ 13. Users can also avoid repayment several other ways, including by de-linking or closing bank accounts or debit cards associated with EarnIn accounts, submitting stop payment orders with banks, or closing EarnIn accounts entirely.

### B. Plaintiffs' Transaction Records Show They Often Declined to Tip or Use Lightning Speed

Transaction data from the named Plaintiffs—Orubo, Lett, Sims, and Mathis—confirms that they frequently declined to tip and frequently opted for the no-fee, standard Cash Outs with ACH delivery.

**Orubo.** Since 2018, Orubo has received 79 Cash Outs. *See* Ex. 6. EarnIn advanced him $7,396 of his earned wages in total, yet he only paid EarnIn an aggregate of $62 in tips and $63.83 in Lightning Speed fees—less than 1% of the advanced total in each category. *Id.* In 62 out of 79 transactions, Orubo left no tip. He chose Lightning Speed just 17 times. *Id.* In nearly 60% of his transactions, Orubo paid nothing at all—i.e., no tips or Lightning Speed fees. *Id.*



COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

**Lett.** Since 2017, Lett has received 422 Cash Outs—including 110 *after* filing this lawsuit. *See* Ex. 9. During that time, she selected at least 15 different tip amounts and 147 standard Cash Outs with free ACH transfers. *Id.* In total, EarnIn advanced Lett $41,326 of her earned wages, while she paid EarnIn an aggregate of $3,672.50 in discretionary tips and $416.73 in optional Lightning Speed fees—approximately 8.8% and 1%, respectively, of the amount EarnIn advanced to her. *Id.*



**Sims.** Since becoming an EarnIn user in 2018, Sims has received 565 Cash Outs—including 38 *after* filing this lawsuit. *See* Ex. 7. Sims tipped 11 different tip amounts, left no tip in 31 transactions, and chose to pay zero Lightning Speed fee in approximately 148 transactions. *Id.* Of the $50,335 advanced, only $847 went to discretionary tips and $467.76 to optional Lightning Speed—roughly 1.6% and 1%, respectively. *Id.* Sims also understood that he had no obligation to repay. On at least four separate occasions, Sims did *not* repay on his scheduled payday. *See id.* Sims voluntarily repaid on later dates—without any late fees, interest, or any other penalties—to restore his access and continue obtaining Cash Outs. *See id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP



**Mathis.** Since 2017, Mathis has received 169 Cash Outs—including 2 *after* filing this lawsuit. *See* Ex. 8. EarnIn advanced Mathis $16,055.21 of her earned wages in total, yet she only paid $77 in discretionary tips and $214.45 in optional Lightning Speed fees—less than 1% and 1.3% of the total amount advanced, respectively. *See id.* Mathis also understood tipping was optional, as she left zero tip in 100 out of 169 transactions. *See id.* In 114 separate transactions, Mathis paid no Lightning Speed fee. *See id.* Further, Mathis' records underscore that repayment is not required—Mathis left EarnIn's platform without consequence despite choosing not to repay her most recent Cash Out. *See id.*



COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

### C. The Current Record Supports Dismissal

Plaintiffs filed this lawsuit on August 2, 2024, asserting claims under the GPLA and TILA. ECF No. 1. On October 28, 2024, EarnIn moved to dismiss. ECF No. 20. Rather than oppose the motion, Plaintiffs filed a First Amended Class Action Complaint on November 12, 2024, repeating the same legal claims with added factual allegations. ECF No. 22.

EarnIn again moved to dismiss on January 10, 2025. The motion to dismiss was short, and made two arguments—(1) there is no GPLA violation because there is no obligation to repay the Cash Out, and (2) EarnIn is not a "creditor" under TILA because Cash Outs are not payable in "more than four installments" and tips and Lightning Speed fees are not extensions of "credit" or "finance charges" because they are not "incident to the extension of credit." ECF No. 30 at 9–12.

After briefing and argument, the Court denied the motion. ECF No. 40. The Court held that Plaintiffs stated a claim under the GPLA because they alleged that there was a "real intent and understanding" that Cash Outs are to be repaid, despite that there was no legal obligation to do so. *Id.* at 5–7. The Court also held that (1) Cash Outs are "credit" under TILA because EarnIn users have an obligation to repay Cash Outs from pre-authorized debits from their accounts, (2) tips are "finance charges" because they are "mandatory" and/or "inextricably intertwined" with advances, and (3) Lightning Speed fees are "finance charges" because they are "necessary conditions" to receiving advances. ECF No. 40 at 9–12.

Since the Court's order, EarnIn retained new counsel. *See* ECF Nos. 45–48. In the interest of resolving dispositive issues at the pleading stage, EarnIn submits the following that was not briefed or addressed at the motion to dismiss stage:[4] (1) transaction records incorporated by reference, which show Lightning Speed fees and tips are optional; (2) the Georgia Attorney General's unofficial 2024 opinion (U2024-1), concluding that instant access fees are not "interest";[5]

---

[4] Rule 12(c) motions are distinct from motions for reconsideration, when the defendants raise "new and distinct arguments that were not before the Court" in the motion to dismiss. *See, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2012 WL 1745593, at *3 (N.D. Cal. May 16, 2012) (Rule 12(c) motion proper where defendants raised new arguments based on the text of license agreements).

[5] EarnIn's prior counsel submitted the Georgia Attorney General's unofficial opinion to the Court after the Motion to Dismiss hearing, and one week before the Court's order on the Motion to Dismiss. *See* ECF No. 39. But there was no briefing on that unofficial opinion.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

(3) Georgia Senate Bill 282 (Feb. 2025), which would be redundant if the GPLA already applied to EWA products; and (4) publicly available documents making users aware that they may revoke their debit authorization at any time.

This case is one of many class actions across the country that are using the pretext of lending laws to target EWA products. In *Golubiewski v. Activehours, Inc.*, the Middle District of Pennsylvania dismissed a TILA claim—reaching the opposite result from this Court after noting that the transaction history alleged in the Complaint indicated that fees and tips were voluntary. *See* No. 3:22-CV-02078, 2024 WL 4204272, at *6 (M.D. Pa. Sept. 16, 2024). And EarnIn also just filed a motion to dismiss in *Ramirez v. Activehours, Inc.*, a similar putative class action alleging violations of the Military Lending Act and TILA. No. 5:25-cv-03626-PCP, ECF No. 1-3 (N.D. Cal. Apr. 24, 2025) ("*Ramirez* Action"). That motion underscores why EarnIn's product does not qualify as "credit," and why tips and Lightning Speed fees are not "finance charges." *See id.*, ECF No. 21.

### III.   LEGAL STANDARDS

A Rule 12(c) analysis is "substantially identical" to a Rule 12(b)(6) analysis. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *see also Grouse River Outfitters Ltd. v. Oracle Corp.*, 848 F. App'x 238, 243 (9th Cir. 2021) ("A Rule 12(b)(6) motion does not preclude a subsequent Rule 12(c) motion."). Thus, a Rule 12(c) motion "is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

### IV.   ARGUMENT

Neither TILA nor the GPLA applies here because Plaintiffs have not—and cannot—allege that optional Lightning Speed fees or tips associated with the Cash Out product qualify as "finance charges" or "interest."

TILA governs only where "credit" is extended with a corresponding "finance charge." *See* 15 U.S.C. § 1638(a). The GPLA similarly applies only to loans where "interest" exceeds 16% annually. *See* O.C.G.A. § 16-17-2(a)(1)(G).

TILA defines "finance charge" as:

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

> "[T]he cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction."

12 C.F.R. § 1026.4(a). In its April 30, 2025 order, relying on the Amended Complaint's allegations, this Court found that tips were "incident to" a Cash Out because "paying a tip is inextricably intertwined with obtaining a cash advance." ECF No. 40 at 12. The Court also found the Lightning Speed fee to be a "necessary condition" for credit on "the terms offered." *Id.* But the supplemented record of Plaintiffs' actual transaction history now tells a different story.

### A. The Transaction Records Show Tips and Lightning Speed Fees Are Voluntary—and Therefore Not Finance Charges under TILA

The named Plaintiffs' own records reveal that they—like many EarnIn users—routinely choose to receive Cash Outs without paying any tip or Lightning Speed fee.

**Tips.** In holding that tips were "finance charges" and "inextricably intertwined" with advances, the Court relied on Plaintiffs' allegation that tips are "effectively mandatory." ECF No. 40 at 12. But EarnIn does not require tipping, does not condition the advance on the payment of a tip, and does not determine the amount of the tip—if a tip is chosen at all. *See* Ex. 1, The Cash Out Services § 6. Tips can be $0. Users get the same Cash Out regardless of whether a user chooses to tip, and regardless of how much. *See id.* Out of nearly 80 transactions from July 2018 to September 2023, Orubo chose not to tip nearly 80% of the time. In fact, from May 2022 through September 2023, he tipped only once in 55 transactions, i.e., fewer than 2% of the time. *See* Ex. 6. Mathis' transaction records tell a similar story. Across all transactions, Mathis left no tip in 59% of them—and never tipped more than $4.00. *See* Ex. 8. These patterns irrefutably confirm that tipping is optional, not mandatory, not inextricably intertwined with advances, and therefore not a finance charge.[6] *Slowjewski v. Polam Fed. Credit Union*, No. C-09-3011 JCS, 2010 WL 4973757,

---

[6] Plaintiffs' continued use of the Cash Out product even after filing this lawsuit, *see supra* at 6–7, also defeats their standing to bring a TILA claim. Plaintiffs allege only that EarnIn failed to make the disclosures required by TILA. FAC ¶¶ 120–21. But that allegation, by itself, is not enough. *See Littlejohn v. Phoenix Title Loans LLC*, No. CV-18-04250-PHX-SMB, 2020 WL 2527017, at *6 (D. Ariz. May 15, 2020) ("Absent allegations establishing how Defendant's TILA violations harmed or created a material risk of harm . . . bare procedural violations allege no concrete injury."). Indeed, Plaintiffs do not allege any concrete harm, and they cannot allege they would have

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

at *8–9 (N.D. Cal. Dec. 1, 2010), *aff'd sub nom. Slojewski v. Polam Fed. Credit Union*, 473 F. App'x 534 (9th Cir. 2012) ("Fedex/wire fees" in a mortgage refinance not finance charges because there was "no evidence that these charges were required in connection with the transaction."); *Veale*, 85 F.3d at 579 ("Since [plaintiffs] could have chosen not to pay the [expedite] fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit.").

Similarly, a fee that a user can simply decline, without consequence, cannot be "imposed" under TILA—an issue not previously briefed or addressed by the Court.[7] *See* 15 U.S.C. § 1605(a) (excluding third-party charges from "finance charge" if "the creditor does not require the imposition of the charges"); *O'Brien v. J.I. Kislak Mortg. Corp.*, 934 F. Supp. 1348, 1357 (S.D. Fla. 1996) (stating that the court "must examine the facts surrounding the imposition of that fee to determine whether the creditor either directly or indirectly *required that fee* so as to come under the definition of a finance charge"). In fact, regulators have excluded optional add-ons like insurance premiums and debt cancellation fees from the definition of finance charges.[8] And the Federal Reserve has acknowledged that some EWA providers operate without charging any finance charges—specifically "by relying on voluntary tips." Payday, Vehicle Title, and Certain High-Cost Installment Loans, 82 Fed. Reg. 54472, 54547 (Nov. 17, 2017).[9]

**Lightning Speed Fees.** Lightning Speed fees also do not meet the definition of finance charges because they are (1) optional and (2) related solely to expedited delivery timing, not the terms of the advance.

Plaintiffs received Cash Outs irrespective of whether they paid the Lightning Speed fee.

---

"behaved differently" absent the alleged TILA violation, given Plaintiffs Lett, Sims, and Mathis continued to transact after filing suit. *See Railey v. Pentagon Fed. Credit Union*, No. EDCV 22-2166 JGB (SPX), 2024 WL 3059343, at *9 (C.D. Cal. May 9, 2024) (dismissing TILA claim where plaintiff "fail[ed] to allege that she would have behaved differently or that any other downstream consequences flowed from [d]efendant's alleged TILA violation").

[7] "Impose" is defined as "to establish or apply as compulsory." *Impose*, WEBSTER'S NEW COLLEGIATE DICTIONARY (1st ed. 1981).

[8] *See* FDIC, *Consumer Compliance Examination Manual*, V-1.13 (rev. July 2024), available at: https://www.fdic.gov/resources/supervision-and-examinations/consumer-compliance-examination-manual/documents/5/v-1-1.pdf.

[9] This point is reinforced by the legal definition of "tip" under the Fair Labor Standards Act, which describes a tip as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. . . . Whether a tip is to be given, and its amount, are matters determined solely by the customer." 29 C.F.R. § 531.52(a).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

For example, Sims chose to pay *zero* Lightning Speed fees in roughly 148 of his transactions. *See* FAC ¶ 34 n.1; Ex. 7. Lett declined Lightning Speed in roughly 54% of her applicable transactions—147 out of 274 between March 2022 and July 2025. *See* Ex. 9. At one point, she went 20 consecutive Cash Outs without choosing Lightning Speed for expedited delivery. *Id.*

To the extent the Court relied on the Complaint's allegations to find that Lightning Speed fees are a necessary condition for "instant access," which constitutes a different product altogether, (ECF No. 40 at 12), that conclusion does not hold up under scrutiny. Lightning Speed delivery affects ***timing***, not ***terms***. For example, in *Veale v. Citibank, F.S.B.*, the Eleventh Circuit held that a FedEx mailing fee to expedite a loan refinance was *not* a finance charge because the lender didn't require it, and the borrower could have waited for regular mail. *See* 85 F.3d at 579. Regulators agree. When the CFPB promulgated Regulation Z, it cited *Veale* favorably. *See* Regulation Z; Truth in Lending, 75 Fed. Reg. 58539, 58627 n.77 (Sept. 24, 2010). In its Official Interpretations, the agency confirmed that expedite fees are not finance charges when there is a no-fee alternative. *See* 12 C.F.R. pt. 1026, supp. I, Part 1 ¶¶ 6(a)(2)-2(ix)–(x) (2024). The CFPB has long recognized this in credit card contexts—and that applies here too.[10] *See* Truth in Lending, 68 Fed. Reg. 16185, 16187 (Apr. 3, 2003).

### B. Georgia Law Confirms Tips and Fees Are Not "Interest" Under the GPLA

Nor can Plaintiffs proceed under the GPLA. That statute applies only to loans of $3,000 or less carrying interest over 16% annually. *See* O.C.G.A § 16-17-2(a)(1)(G). But one-time Lightning Speed fees—charged for expedited delivery—do not become "interest" merely because they accompany an advance. *See Williams v. First Bank & Tr. Co.*, 269 S.E.2d 923, 925 (Ga. App. 1980). They do not recur, they do not accrue, and they do not change over time. That is not interest under any recognized financial definition.

The Georgia Attorney General agrees. Just months ago, he issued an advisory opinion that

---

[10] And while the Court's April 30 Order references the CFPB's *proposed* interpretive rule from July 2024, that rule remains unfinalized and deserves no deference. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("[C]ourts...may not defer to an agency interpretation of the law Simply because a statute is ambiguous."). The proposed rule conflicts with decades of regulatory guidance and widespread industry opposition.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

instant access fees are **not** "interest" under state usury laws because such fees:

> "are based on the service of providing the funds and not based on the time value of the funds...and where the fees and the transferred amount are advanced on a non-recourse basis."

ECF No. 39-2. Plaintiffs do not—and cannot—allege that EarnIn charges interest. Plaintiffs' claims fail as a matter of law because tips and Lightning Speed fees are optional, one-time fees for services.

### C. EarnIn's Cash Out Product Is Neither "Credit" under TILA Nor a "Loan" under the GPLA

Plaintiffs' claims under GPLA and TILA fail as a matter of law because EarnIn's Cash Outs are not "credit" under TILA and do not qualify as "loans" under the GPLA.

For TILA to apply, the transaction must involve a legal obligation to repay. *See, e.g., Foster v. EquityKey Real Est. Invs. L.P.*, No. 17-CV-00067-HRL, 2017 WL 1862527 (N.D. Cal. May 9, 2017) (holding option contract where purported lender advanced funds in exchange for option to recoup funds based on real estate appreciation was not "debt" where "there [was] no guarantee that the payment received by [plaintiffs] need ever be returned"); *Reed v. Val-Chris Invs., Inc.*, No. 11-cv-371 BEN (WMC), 2011 WL 6028001, at *2 (S.D. Cal. Dec. 5, 2011) (holding that a cash advance on the plaintiff's inheritance was not a "credit transaction" subject to TILA because the "[p]laintiff incurred no debt and [the defendant] had no recourse against [the] [p]laintiff if his potential inheritance was not sufficient to cover [the advance]"). The same principle governs whether a transaction is a "loan" under Georgia law. Although the GPLA does not define "loan," the Georgia Supreme Court has interpreted O.C.G.A. § 16-17-2(b) to include only "transactions in which funds are advanced to be repaid at a later date." *Ruth v. Cherokee Funding, LLC*, 304 Ga. 574, 579 (2018). As the court explained, the statute "is most reasonably understood to contemplate an agreement that imposes an obligation to repay." *Id.* (finding no "meaningful distinction between a contract requiring repayment . . . and an agreement pursuant to which funds are advanced to be repaid.") (internal quotations omitted).

This Court previously concluded there was an "understanding" of repayment, pointing to the user's authorization of automatic debits. *See* ECF No. 40 at 5. But the Court was not briefed

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

on a key fact: users may revoke their debit authorization at any time via email or by live-chatting EarnIn's customer support. *See* Ex. 10; De Jarnette Decl. ¶ 13. That right is stated clearly in EarnIn's Transfer Out Authorization Agreement and on EarnIn's website. *See* Ex. 10; De Jarnette Decl. ¶ 13. Users can also avoid repayment in other ways, including by closing their EarnIn account through the app, by de-linking their bank account or debit card, or by submitting a stop payment order with their bank.

While Plaintiffs pointed to the debit authorization form as evidence of repayment expectations (*see, e.g.*, FAC ¶¶ 55, 60), they ignore that users can—and do—easily opt out of repayment. These features go beyond the contract's disclaimer—they show, in practical terms, that users have a genuine choice not to repay. *See* ECF No. 40 at 7 (examining the "real-world" nature of repayment); *see also* Ex. 1, The Cash Out Services § 7 (explaining that users "do not have an obligation to repay any of the Cash Out Services"). Plaintiffs' transaction records prove this point—Mathis declined to repay her most recent Cash Out for $100 and instead walked away from EarnIn with a gain (*see* Ex. 8); Sims also chose not repay on his scheduled payday on at least four separate occasions, and instead repaid later to continue using Cash Outs, without suffering any late fees, interest, or other penalties or consequences for the decision not to repay on the scheduled paydays. *See* Ex. 7. Put simply, there is no actual obligation to repay—legal or otherwise. *See Harmon v. Fifth Third Bancorp*, No. 18-CV-00402, 2020 WL 2512820, at *3, 8 (S.D. Ohio May 15, 2020), *aff'd*, 858 F. App'x 842 (6th Cir. 2021) (no credit where the plaintiff had "no liability [*i.e.*, no debt or obligation to repay]").

### D. Georgia Law and Legislative Action Confirm Cash Outs Are Not Loans

Georgia legislative history supports that Cash Outs are not "loans." In February 2025, the Georgia Legislature introduced Senate Bill 282 to regulate EWA providers like EarnIn. Closely mirroring bills proposed in 2021 and 2023–2024, the 2025 bill provides that (1) no EWA product compliant with the law "shall be considered lending activity or money transmission," and (2) "no fees permitted under [the bill] shall be considered interest." S.B. 282, § 1(d), 2025 Leg., Reg. Sess. (Ga. 2025). The Bill also authorizes a per-transaction fee—the greater of $5.00 or 5% of the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP

advance. *Id.* at § 1(c)(2).[11]

If Cash Outs were already covered by the GPLA, this legislation would serve no purpose. Duplicative laws are disfavored. *See Velasquez v. State*, 623 S.E.2d 721, 724 (Ga. App. 2005) (courts "must avoid constructions which result in surplusage"); *In re Tractug Assocs.*, 1996 WL 230765, at *4 (N.D. Cal. Apr. 30, 1996) ("a statute is to be construed in light of the provisions of related statutes"). The fact that Georgia sought to regulate these products prospectively confirms that they are not presently treated as loans under Georgia law.

## V. CONCLUSION

The record now before the Court contradicts Plaintiffs' core allegations. Their own transactions show that tips and Lightning Speed fees are optional, repayment is avoidable, and EarnIn imposes no legal obligation to repay (or penalties for a decision not to repay). As such, Cash Outs are neither "credit" under TILA nor "loans" under the GPLA—both of which require a repayment obligation. Georgia law reinforces this result. The Attorney General's opinion and Senate Bill 282 confirm that earned wage access services are not treated as lending and that associated fees are not "interest." For all these reasons, EarnIn's motion for judgment on the pleadings should be granted and the case dismissed with prejudice.

Dated: July 25, 2025                         COOLEY LLP

By: /s/ *Brett De Jarnette*
      Brett De Jarnette

*Attorneys for Defendant*
ACTIVEHOURS, INC. dba EARNIN

---

[11] Georgia is not alone in its view that EWA products are not credit or loans. EWA-focused legislation has been introduced in more than a dozen states, most of which explicitly state that EWA products are not credit or loans. Additionally, Congress is currently considering a bill that would impose specific requirements on EWA providers and would define EWA as not consumer credit under TILA. *See Earned Wage Access Consumer Protection Act*, H.R. 7428, 118th Cong., 2d Sess. (2024). And the Treasury Department has echoed this approach, proposing in 2022, 2023, and 2024 to amend the Internal Revenue Code to clarify that EWA products are not loans and to define them as "an arrangement that allows employees to withdraw earned wages before their regularly scheduled pay dates." *See* Dep't of Treasury, *General Explanations of the Administration's Fiscal Year 2023 Revenue Proposals* at 107 (2022); Dep't of Treasury, *General Explanations of the Administration's Fiscal Year 2024 Revenue Proposals* at 208 (2023); Dep't of Treasury, *General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals* at 233 (2024).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

DEF.'S MOTION FOR
JUDGMENT ON THE PLEADINGS
5:24-CV-04702-PCP